# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

ANN MITCHELL, personal : 
representative of the estate of RAY
ANSON MITCHELL, Deceased, :

    Plaintiff, :

vs. : CA 15-0360-CG-C

CITY OF MOBILE, et al., :

    Defendants.

## ORDER

This cause came on for a telephone conference on June 15, 2016 (*see* Doc. 67), on plaintiff's motion to compel discovery (Doc. 59) and the response in opposition of the City of Mobile (Doc. 64). Based upon the comments and arguments of counsel on June 15, 2016, a review of the briefs of the relevant parties, with attachments,[1] and the undersigned's *in camera* review of the documents at issue,[2] this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72(a)(2)(S).

## RELEVANT BACKGROUND INFORMATION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, alleging that two of the individually-named officers, Steven Chandler and Miranda Wilson, used excessive and unnecessary deadly force against the plaintiff's decedent on September 5,

---

[1] Of particular import, the undersigned considered the City of Mobile's Privilege Log of Internal Affairs File (Doc. 64, Exhibit A), as well as the June 7, 2016 Affidavit of Lieutenant Matthew Garrett of the City of Mobile Police Department (Doc. 65, Exhibit A).

[2] These documents were produced in hard copy for *in camera* review. The City of Mobile is hereby **ORDERED** to file the subject documents under seal for any future review necessary by the Court, and the Clerk's Office is instructed that the City of Mobile has the undersigned's authority to file these documents under seal.

2013, thereby violating the decedent's rights protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and that defendant Patrick Palmer failed to intervene or otherwise prevent the unlawful use of deadly force. (Doc. 1, at 1-6.) The plaintiff also asserts claims against the City of Mobile arising under § 1983 (*id.* at 6-7); however, the undersigned recently set the parties on a "bifurcated" scheduling track which allows for discovery solely against the individually-named officers, at present, to be followed, if necessary, by a period of discovery directed to the City of Mobile's liability (Doc. 58, at 2 ("[T]he parties should concentrate on deposing the officers involved in Ray Mitchell's death on the current pretrial schedule, so that dispositive motions can be filed by the defendant officers directed to whether there was any violation of Mr. Mitchell's constitutional rights, before any discovery is conducted with respect to the City's liability to the plaintiff. . . . The second phase—directed to the City of Mobile's liability to the plaintiff—will be conducted following a determination by the Court that the issue of whether Mr. Mitchell's constitutional rights were violated by the defendant officers cannot be resolved on summary judgment.")).

It is against this backdrop that the plaintiff filed the instant motion to compel, which questions the City of Mobile's refusal to disclose any information concerning any investigation of the incident described in the complaint by the Mobile Police Department's Internal Affairs unit. (*Compare* Doc. 62 *with* Doc. 59.)[3] For its part, the City contends that the documents at issue are protected from disclosure by the law enforcement privilege. (Doc. 64.)

---

[3] Plaintiff specifically requested all investigation files and the City objected to production of any information concerning any investigation of the incident by the Internal Affairs unit. (Doc. 59, Exhibit A, at 5.)

It is clear that two units within the Mobile Police Department, the Homicide unit and the Internal Affairs unit, investigated the officer-involved shooting death of Ray Mitchell. And while the privilege log produced by the City of Mobile in this matter is designated as the Internal Affairs File Privilege Log, there can be no question but that there was significant overlap between the two investigations such that most of the documents listed on the privilege log were simply copies of documents generated by the homicide investigation, whether by the homicide investigators, the Alabama Department of Forensic Sciences, or by some other individual or entity. (*See* Doc. 64, Exhibit A.) Indeed, counsel for the City admitted that it has not produced to the plaintiff any items in the Internal Affairs file unique to that file; in other words, there has been no production in this case by the Internal Affairs unit of documents it generated. Having said that, the documents generated by the Internal Affairs unit number only four, those four consisting of a total of nine pages, more fully described as follows: (1) the January 6, 2014, executive summary to the Chief of Police from the investigator with the Internal Affairs Unit, which was approved by the commander of the unit and contains the circumstances, summary, conclusions, findings, and recommendations of the IA investigator regarding the officer-involved shooting; (2) the typed memorandum of the IA interview of Corporal Steve Chandler by the IA Investigator conducted on September 6, 2013; (3) the typed memorandum of the IA interview of Officer Miranda Wilson by the IA Investigator conducted on September 6, 2013; and (4) the typed memorandum of the IA interview of Officer Patrick Palmer by the IA Investigator conducted on September 6, 2013. (Doc. 64, Exhibit A, Privilege Log.) The City made clear in its brief and during the telephone hearing that the interviews of the officers by the Internal Affairs unit occurred before the interviews of the officers by the Homicide unit, albeit only minutes to an hour or so before the interviews conducted by the

Homicide unit, and that the officer interviews conducted by the Internal Affairs unit were not recorded.

Given the City of Mobile's assertion of the law enforcement privilege, the questions this Court must answer are whether the privilege applies to the documents in question and, if yes, whether this qualified privilege must give way to plaintiff's need for disclosure of all, or a part (that is, factual information), of the documents at issue. With the benefit of *in camera* review, the undersigned finds that the memoranda of officer interviews contain solely factual information and that the executive summary to the Chief of Police contains both factual information—in the "Circumstances" and "Summary and Conclusions" sections—and evaluative information—in the Findings and Recommendations section. In regard to whether the privilege applies, and perhaps informing further inquiry, the undersigned sets forth at some length the contents of the affidavit of Lieutenant Matthew Garrett, the unit supervisor for the Internal Affairs unit of the Mobile Police Department (Doc. 65, Exhibit A, ¶ 1):

> 2. In September of 2013, an investigator with the Internal Affairs unit was assigned to investigate a shooting incident that occurred on September 5, 2013 involving City of Mobile police officers and Mr. Ray Mitchell. This investigation was separate from the homicide investigation conducted by the Mobile Police Department relating to the same incident. The purpose of the Internal Affairs investigation was to determine whether the actions of the officers on the date of the incident were in conformity with the policies, procedures, rules and regulations of the City of Mobile Police Department. The primary purpose of this type investigation is to make an internal evaluation of the officer's performance of his/her official duties and a determination about their continued fitness for that position.
>
> 3. I have reviewed the file maintained by the Internal Affairs unit relative to the incident involving Mr. Ray Mitchell that I understand is the basis for the above-styled lawsuit. The records of the Internal Affairs investigation into the incident involving Mr. Mitchell consisted of, among other items, interviews of the involved police officers. Memoranda prepared by the investigating Internal Affairs officer summarizing the officer interviews was included in the Internal Affairs file[,] which is maintained in the Internal Affairs unit, and these materials are not subject

4

to public dissemination. The Internal Affairs officer conducting these interviews must exercise his/her judgment and discretion in determining what information from the officer interviews to include in such memoranda.

  4. Also included within the Internal Affairs materials relative to the subject incident is an Executive Summary. This Summary, which is in Memorandum form, was prepared by the Internal Affairs investigator and is directed to the Chief of the City of Mobile Police Department. It contains a summary, conclusions, findings, and recommendations of the Internal Affairs investigator based upon review of the information collected during the course of the investigation, as well as a review of certain departmental policies.

  5. The officers of the City of Mobile Police Department who were subject to this Internal Affairs investigation were ordered and required to cooperate fully and to answer all of the questions asked of them during these interviews. These officers were given a *Garrity* warning prior to being questioned, a warning which informed them that their failure to answer questions during the interview would subject them to a departmental charge of failure to obey a direct order which could result in their dismissal from the Police Department.

  6. The expectation of officers of the Police Department is that reports and materials related to the Internal Affairs investigation will be kept in confidence by the Police Department in the Internal Affairs unit. This ability to keep the information collected confidential allows the Internal Affairs unit to obtain full and frank disclosure not only from the officers being investigated but also from any witnesses interviewed. The records of the Internal Affairs unit are not considered public records, and are not made available to the public.

  7. The records maintained by the Internal Affairs unit regarding the investigation of the incident involving Mr. Ray Mitchell are not part of the separate homicide investigation, and are not submitted to any other governmental agency or individual. Instead, they are only made available to Chief of the Mobile Police Department or to department personnel specifically authorized by the Chief to review those records.

  8. If the Internal Affairs unit was unable to keep this information confidential, there would likely be a chilling effect on those persons being interviewed, including police officers, who would be less likely to show the same level of candor in providing information. There would be a similar effect on the ability of the Internal Affairs unit to conduct full and through investigations of any incident if the Police Department had to be concerned that its internal evaluation was subject to disclosure in subsequent civil litigation.

(*Id.* at ¶¶ 2-8.)

## CONCLUSIONS OF LAW

Before delving into the specifics of the law enforcement privilege, it need be noted that Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). Under this rule, relevancy has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (citation omitted); *see also Hope For Families & Community Serv., Inc. v. Warren*, 2009 WL 174970, *3 (M.D. Ala. Jan. 26, 2009) (recognizing that district courts have "broad discretion to ensure that parties 'obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense,' and '[f]or good cause, . . . may order discovery of any matter relevant to the subject matter involved in the action.'"). Importantly,

> [r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. [I]f there is an objection that the discovery goes beyond material relevant to the parties' claims or defenses, the Court . . . become[s] involved to determine whether the discovery is relevant to the claims or defenses[.] If it is not, the court must [then] determined "whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

*Id*. (internal quotation marks and citations omitted); *see also id*. ("Rule 26(b)(1) is 'highly flexible,' *United States v. Microsoft Corp.,* 165 F.3d 952, 959-60 (D.C. Cir. 1999), and, as a whole, the federal discovery rules are to be construed broadly and liberally, *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)."). Indeed, "[t]he standard for what constitutes relevant evidence is a low one[.]" *United States v. Tinoco,* 304 F.3d 1088, 1120 (11th Cir. 2002), *cert. denied sub nom. Hernandez v. United States,* 538 U.S. 909,

123 S.Ct. 1484, 155 L.Ed.2d 231 (2003); *see also Kipperman v. Onex Corp.,* 2008 WL 1902227, *10 (N.D. Ga. Apr. 25, 2008) ("Rule 26 sets forth a very low threshold for relevancy[,]" and "[t]hus, the court is inclined to err in favor of discovery rather than against it.").

In this action, the City of Mobile makes no argument that the documents in question are not relevant (*see* Doc. 64) and, having had the opportunity to review those documents, the undersigned finds that the documents are inherently relevant. Therefore, the undersigned analyzes this information within the context of the asserted privilege—that is, the law enforcement privilege—to determine whether it is discoverable. *See Mingo v. City of Mobile, Alabama,* Civil Action No. 12-0056-KD-B, Doc. 92, at 4 ("[T]hough relevant, discovery may be denied where the existence of a privilege has been established."); *compare id. with* Fed.R.Civ.P. 26(b)(1) (describing discoverable information as non-privileged matter that is relevant to a party's claim or defense).

There can be little question but that a qualified law enforcement privilege exists which protects investigative files, *Mingo, supra,* at 5, and it is also clear that this privilege is designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of New York,* 856 F.2d 481, 484 (2d Cir. 1988) (citations omitted); *Mingo, supra,* at 6 (same). As noted by this Court in *Mingo,* "[t]o assert the privilege, the agency or department must: (1) submit a formal claim of privilege by the head of the department that has control over the information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation of why it properly falls within the scope of the privilege." *Id.* at 6, citing *In re Polypropylene Carpet Antitrust*

7

*Litigation*, 181 F.R.D. 680, 687 (N.D. Ga. 1998) and *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988). With respect to this third prong, it is clear that "the party asserting the law enforcement privilege bears the burden of showing that the privilege [] applies to the documents at issue. This is accomplished by demonstrating that the documents contain information that the law enforcement privilege is intended to protect." *Dorsett v. County of Nassau*, 762 F.Supp.2d 500, 520 (E.D.N.Y. 2011) (internal quotation marks and citations omitted), *aff'd*, 800 F.Supp.2d 453 (E.D.N.Y. 2011), in turn *aff'd*, 730 F.3d 156 (2d Cir. 2013).

Although the Garrett affidavit could have made a clearer showing that he is head of the Internal Affairs unit, that is, the head of the department having control of the nine pages of information described more fully above, given the representation of counsel for the City that Garrett is the head of that department, the undersigned finds that the City has satisfied the first requirement. As well, the second requirement is met because the assertion of the law enforcement privilege is made by Garrett based on his personal consideration of the subject information. It is concerning the third requirement, however, that Garrett and the City of Mobile arguably falls short. Garrett's affidavit and the information supplied by the City's attorney during the hearing establish, at best, raise a concern with protecting law enforcement personnel with regard to the memoranda of the officer interviews and a concern with revealing law enforcement techniques and procedures and protecting law enforcement personnel with respect to the executive summary.[4] The concern with revealing law enforcement techniques and

---

[4] The investigation into this incident has been concluded and all the "witnesses" to the incident are known and, thus, there exists no basis to safeguard privacy or for finding that the information contained in the officer interviews or executive summary will interfere with an investigation. Furthermore, neither the interview memoranda nor the executive summary make
(Continued)

procedures falls away in this case given that plaintiff is simply after the factual information contained in the executive summary to the exclusion of the evaluative portion of the summary. Accordingly, the question is whether the factual information contained in the interview memoranda and the executive summary serves to "protect" law enforcement personnel. It is the argument of the City that police officers would be less candid and cooperative with the Internal Affairs investigation if this information is not protected. The undersigned finds this argument to be a bit of a red herring since the information in the interview memoranda simply sets the background and circumstances leading to the shooting, the same as that undoubtedly contained in the interviews conduct by the Homicide unit, which have been produced to the plaintiff. Moreover, the fear that officers will be less candid in future investigations is simply not likely inasmuch as officers involved in shootings necessarily are required to talk to the Internal Affairs unit and are afforded "protection" for their candor. Therefore, the undersigned finds that in this particular case the City of Mobile has not carried its burden of demonstrating that the documents at issue contain information that the law enforcement privilege is intended to protect. Nevertheless, because reasonable minds could perhaps differ regarding whether the documents at issue in this case fall within the scope of the law enforcement privilege, *cf. Mingo, supra,* at 8, the undersigned continues the analysis and turns to a consideration of whether the law enforcement privilege protects the subject documents in this case against disclosure, *id.* at 7 ("'A

---

reference to confidential sources or witnesses who have any desire to be protected. Finally, the memoranda simply do not disclose law enforcement techniques and procedures.

finding that the documents fall within the scope of the law enforcement investigatory privilege does not end the Court's analysis.'").

As recognized by the Fifth Circuit in *In re United States Dep't of Homeland Security*, 459 F.3d 565 (2006), in determining whether the law enforcement privilege protects particular documents from disclosure, "the court must balance 'the government's interest in confidentiality against the litigant's need for the documents[,]'" *id.*, at 570, quoting *Coughlin v. Lee,* 946 F.2d 1152, 1160 (5th Cir. 1991), which, in turn, requires this Court's consideration and weighing of the oft-cited *Frankenhauser*[5] factors:

> (1) the extent to which disclosure of an informant will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; [and] (10) the importance of the information sought to the plaintiff's case.

*Id.,* citing *Tuite v. Henry,* 98 F.2d 1411, 1417 (D.C. Cir. 1996). Before turning to these factors, the undersigned recognizes that "[t]he claim for application of the privilege is 'somewhat stronger' when law enforcement is seeking to protect ongoing investigations as contrasted with closed files, decisions to prosecute as contrasted with decisions not to prosecute, confidential informant identities as contrasted with names of incidental witnesses, confidential law enforcement methods and tactics as contrasted with simple

---

[5] *Frankenhauser v. Rizzo,* 59 F.R.D. 339 (E.D. Pa. 1973), *superseded by statute on other grounds as stated in Crawford v. Dominic,* 469 F.Supp. 260 (E.D. Pa. 1979).

interview materials, and evaluative opinions as contrasted with facts." *Vodak v. City of Chicago,* 2004 WL 2032147, *4 (N.D. Ill. Sept. 9, 2004), citing *G-69 v. Degnan,* 130 F.R.D. 326, 332 (D. N.J. 1990).

The first two factors weigh in favor of disclosure because the information was gathered by and relates to law enforcement personnel involved in the incident rather than private citizens. The documents contain no information from confidential informants and to the extent any reference is made to private citizens, such references are to citizens whose identities are known and who are not anonymous. *See Dobyns v. United States,* 123 Fed. Cl. 481, 493 (Fed. Cl. 2015) (finding significant that identities were not a secret). The third factor weighs in favor of disclosure because the interview memoranda contain no evaluative material and the plaintiff has agreed to the redaction of any evaluative material contained in the executive summary. *See Vodak, supra; compare id. with Frankenhauser, supra,* 59 F.R.D. at 344 ("Judge Reynolds wrote that the privilege protects intragovernmental advisory opinions and recommendations relating to policy-making, but not simple factual reports and summaries."). The fourth factor also weighs in favor of disclosure, given the plaintiff's consent to redaction of the executive summary, because the only information being sought by plaintiff is factual data. *Compare Vodak, supra, with Dobyns, supra,* 123 Fed.Cl. at ("[T]he information sought is factual, not evaluative."). The City has admitted that the fifth factor weighs in favor of disclosure.[6] The sixth factor weighs in favor of disclosure because the investigation has been closed; in other words, there is no ongoing investigation. *See Vodak, supra*. The City, again, has admitted that the seventh factor weighs in favor of

---

[6] Even so, the undersigned would simply note that the plaintiff is not an actual or potential defendant in any actual criminal proceeding that is pending or is reasonably likely to follow the incident in question.

disclosure.[7] The eighth factor weighs in favor of disclosure inasmuch as there is nothing to suggest that plaintiff's claims are frivolous or not brought in good faith, the undersigned having previously recognized that this Court must make a merits decision, on summary judgment, regarding whether there was any violation of Mr. Mitchell's constitutional rights by the officers involved in the incident made the subject of this lawsuit.[8] *See Dobyns, supra,* 123 Fed.Cl. at 493 ("[P]laintiff's lawsuit has been successful to date."). The ninth and tenth factors also favor disclosure because the information sought is not available through other discovery[9] or from other sources and the information sought is important to the plaintiff's case, as explained at no small length by plaintiff's counsel during the hearing on June 15, 2016.

In light of the foregoing, even if the undersigned was to find that the City of Mobile has met the threshold of establishing that the law enforcement privilege applies to the documents it has submitted for *in camera* review, it is clear that this qualified privilege need give way to the plaintiff's need for disclosure of the factual information contained in the documents.[10] Therefore, plaintiff's motion to compel (Doc. 59) is

---

[7] However, to the extent necessary, the undersigned notes that no disciplinary proceedings against the officers involved in the incident have arisen or may arise from the investigation conducted and now concluded.

[8] The sole motion to dismiss filed in this case was directed to plaintiff's state law claim set forth in the complaint (Doc. 9), not to any of plaintiff's constitutional claims brought pursuant to 42 U.S.C. § 1983.

[9] Counsel for the City readily admitted that if these documents are protected from disclosure, any attempts by plaintiff's counsel to ask the defendant officers about what they told the Internal Affairs investigator will be met by invocations of the law enforcement privilege.

[10] In entering this order, the undersigned, like Judge Sonja Bivins in *Mingo, supra,* certainly recognizes the existence of a qualified law enforcement privilege. However, any suggestion by the City of Mobile that the undersigned should make findings identical to Judge Bivins in *Mingo* respecting whether the documents in question fall within the scope of that privilege and, more importantly, with respect to the *Frankenhauser* factors, simply cannot be
(Continued)

**GRANTED** and the Court **ORDERS** the City of Mobile to produce to plaintiff, not later than **June 27, 2016**, the interview memoranda referenced above—that is I.A. Bates Nos. 00116-00117, 00130-00131, and 00141-00142—and a redacted copy of the executive summary containing only factual information, that is, the "Circumstances" and "Summary and Conclusions" contained on I.A. Bates Nos. 00047-00048.[11]

**DONE** and **ORDERED** this the 17th day of June, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

reconciled with Judge Bivins' clear recognition that the qualified privilege can be overridden in appropriate cases, *see Mingo, supra,* at 7 ("The law enforcement privilege is not absolute; it can be overridden in appropriate cases by the need for the privileged materials."), as well as the Eleventh Circuit's similar recognition, *see United States v. Van Horn,* 789 F.2d 1492, 1508 (11th Cir.) ("The privilege will give way if the [party] can show need for the information."), *cert. denied,* 479 U.S. 854, 107 S.Ct. 190, 93 L.Ed.2d 123 (1986).

[11] The City of Mobile may redact the Findings and Recommendations contained on I.A. Bates Nos. 00048-00049.